The State of Ohio, Appellee, *v.* Smith et al., Appellants.

(No. 535—Decided April 21, 1954.)

*Mr. Oliver R. Marshall,* prosecuting attorney, for appellee.

*Mr. E. K. Giblin* and *Mr. J. M. Parks,* for appellants.

GRIFFITH, P. J.  The 30 defendants who were convicted in this case all stand in the same position as Woodrow Smith, so, for the purpose of this opinion, we shall use the name, Woodrow Smith, as representing the composite body of all.

The charge comprised in the affidavit contains two counts.

"1. That Smith and other persons, being more than three in number, assembled; did unlawfully and riotously trespass upon the private property of the Industrial Rayon Corporation and interfere with the personal and private rights of said company contrary to Section 12809, General Code.

"2. That Woodrow Smith being one of more than three persons assembled together to do an unlawful act with force and violence did, unlawfully after proclamation was made, continue together with said other persons contrary to Section 12809, General Code."

Section 12809, General Code, reads, in part, as follows:

"Whoever, being one of three or more persons who assemble together to do an unlawful act with force and violence, or, who being assembled, do such unlawful act or agree with each other so to do and make preparation or movement therefor, or continue together after proclamation is made as provided in section twelve thousand eight hundred and eleven, or is prevented from so being made by rioters, is guilty of riot * * *."

The above section defines riot. 6 Ohio Jurisprudence, 38, Section 2, states that rioting is an act constituting a breach of the peace.

To lay the foundation for the issuance of a proclamation, as provided in Section 12811, General Code, the following requisite must be present: That three or more persons be unlawfully or riotously assembled.

As the sheriff and his deputies arrived at the scene of the assemblage, were these defendants unlawfully or riotously assembled? What were they doing in violation of law? They were in violation of a Common Pleas Court injunction which had been issued the day before, but that is an offense entirely separate and distinct from the crime of rioting.

The record does not disclose that they assembled there that morning with the intent and for the purpose of doing an unlawful act or, after being assembled, that they agreed to do any unlawful act with force and violence, or make any preparation or movement for so doing.

After deputy sheriff Evans issued the proclamation, they continued together and were then arrested.

The record discloses that sheriff Cage said that there was a court order, and they went there to enforce it, and that he stated further:

"I don't know what they were arrested for. I didn't

make any arrests. My deputies had instructions that if they failed to leave or interfere with anyone wishing to enter or leave that plant or they returned after they once left, I want them placed under—and I presume that is what happened.''

''Q. Well you went down there to make these arrests in that fashion this morning didn't you? A. I certainly did.''

It is disclosed further by the record that Cage testified: ''I told them that we were there to enforce a court injunction.''

Mr. Palmer testified that he wanted the road open so people could go to work; and that he did not see any uproarious conduct, slogans, or hear any shouting, profanity or anything of that sort.

Deputy sheriff Evans testified: ''I told what they were doing; that an assembly like that constituted a riot and violation of a court injunction that had been issued on a previous day. 'Disperse and go home,' that's about all I said at the time.''

The state contends that the fact these defendants were arrested at the place of the barricade is evidence against them; that when the state proved the presence of these defendants at the scene, it made a complete prima facie case against them and, thereupon, the defendants were privileged to show that their presence was for a purpose other than participating therein; that the burden was then upon the defendants to explain the prima facie case against them; and that, in the absence of an explanation, the prima facie case stands, and the verdict of guilty is proper.

We believe there was no foundation for the issuance of a proclamation. And there being no foundation for such proclamation in law, no proclamation was ever uttered and, therefore, arresting them for not dispersing in accordance with the proclamation was not justified.

The fact that the sheriff could have arrested them for contempt does not destroy the right to arrest them for a riot if such an offense has been made out. They could be guilty of both. A conviction on an indictment will not purge a contempt, nor will a conviction for a contempt bar an indictment. *Yates* v. *Lansing*, 9 Johnson (N. Y.), 395, 417.

The state contends:

"It is not necessary by the laws of this country to show who committed the unlawful act. The courts of this country have held that people unlawfully assembled and assembled while unlawful acts are committed are responsible each one for the unlawful act so committed."

The record is barren of any evidence that these defendants assembled together to do any unlawful act with force and violence or, being assembled, agreed with each other so to do. They did continue together after the proclamation was issued.

The trial court stated in its holding:

"That the several overt acts of violence and property destruction earlier this week had been committed by these people around the barricade, or their sympathizers and confederates, might reasonably be inferred, and a repetition reasonably expected from the existing circumstances. The barricade, fires, strewn glass and nails, were they not unlawful acts? Was not the assembly in itself a brazen violation of the law in view of an injunction against it?"

Again the court stated:

"The fact that these defendants were arrested at the scene of the crime in itself is evidence against them. If they were there other than participants having nothing to conceal they, like Cunneen, were free to testify and explain this presence."

The prosecution has the burden of proving every essential element of the crime of riot beyond a reason-

able doubt. Consequently, the averment of unlawful assemblage, where this is a constituent part of the offense of riot, as well as that of subsequent riotous acts, must be proved before the defendants can be convicted of riot.

We conclude that the evidence in this case is insufficient to hold the defendants on either of the two counts embraced in the affidavit. Judgment reversed and defendants discharged.

*Judgment reversed.*

PHILLIPS and NICHOLS, JJ., concur.